**THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
WHEELING**


**AMERICAN MUSCLE DOCKS &
FABRICATION, LLC,**

       Plaintiff,

**v.**                                          **Civil Action No. 5:14-CV-56
(BAILEY)**

**MERCO, INC.,**

       Defendant.


**MEMORANDUM OPINION AND ORDER GRANTING
MERCO, INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

       On this day, the above-styled civil action came before this Court upon consideration of Merco Inc.'s Motion for Partial Summary Judgment [Doc. 92], filed February 16, 2016. Defendant filed its response [Doc. 97] on March 8, 2016. Plaintiff filed its reply [Doc. 98] on March 22, 2016. The Motion is now ripe for adjudication. For the reasons that follow, the Motion is **GRANTED**.

I.      Factual and Procedural History

       Plaintiff filed suit in this Court pursuant to 28 U.S.C. § 1331 as it involves claims under federal law, specifically under the Lanham Act. Plaintiff American Muscle Docks & Fabrication, LLC ("AMD") and defendant Merco, Inc. ("Merco") are competitors in the boat dock and boat dock accessory manufacturing business and are located in Brooke County, West Virginia. [Doc. 55 at ¶¶ 1-2]. In March of 2012, AMD purchased the

1

inventory, assets, name and marketing materials of Follansbee Dock Systems ("Follansbee Dock") from the Louis Berkman LLC. Plaintiff's Amended Complaint alleges that defendant Merco made certain claims "to supply docks that are equivalent, if not better quality than plaintiff's" (Id. at ¶ 8), and "[w]e beat the competition pricing by 10%." (Id. at ¶ 9). Plaintiff claims the opposite is true; "Defendant Merco's products are inferior to those of plaintiff." (Id. at ¶ 10). Thus, plaintiff claims that "[b]y representing that their products are equivalent, if not better, and by claiming 'We beat the competition pricing by 10%,' defendant Merco is representing to the general public and the specific consumers that its product is not inferior to plaintiffs (sic)." (Id. at ¶ 11).[1]

Plaintiff also asserts it registered the name "American Muscle Docks & Fabrication" with the US Patent and Trademark Office and that Merco hired defendant Fanscreens[2] to create a website for Merco whereby its own website address and advertisement would appear for every Google search for the plaintiff's web address, "americanmuscledocks.com." (Id. at ¶¶ 13-15). Further, those who conducted a Google search for "americanmuscledocks.com" were transferred to Merco's website without their knowledge (Id. at ¶ 17). Plaintiff complained to Google, which corrected the problem (Id. at ¶ 19). Subsequently, Merco and/or Fanscreens designed a new ad with the heading "American Made Boat Docks," knowing the plaintiff also owns the

---

[1]   This Court is unaware of any cause of action for a company's failure to affirmatively state that its products are inferior to a competitor's.

[2]   Pursuant to the November 11, 2015, Stipulation of Dismissal [Doc. 74], defendant Fanscreens is no longer a party to this action.

domain "americanmadeboatdocks.com," whereby consumers were sent to Merco's website believing it was plaintiff's. (Id. at ¶¶ 20-21).[3]

Plaintiff also alleges that it and Merco often bid on the same projects, and "during some or all of those times, defendant Merco has submitted a bid below cost" and would "intentionally not build the product to the required specifications in an attempt to recoup its losses." (Id. at ¶¶ 25-27).

Plaintiff further alleges Merco and its agents or employees have "intentionally started a rumor that plaintiff had closed," that "[Merco] is the only company in the area that builds docks," and has conveyed the same to one or more potential customers in hopes of converting plaintiff's customers to its own. (Id. at ¶¶ 30-33).

Plaintiff alleges it bought Follansbee Dock, but Merco has told customers and potential customers of AMD that plaintiff is not related to Follansbee Dock, and instead Merco's officers, employees, and/or agents were the driving force behind Follansbee Dock. (Id. at ¶¶ 36, 39, 40). Plaintiff alleges Louis Berkman, former owner of Follansbee Dock prior to its purchase by AMD, fired certain Follansbee Dock employees who later went on to work for Merco. (Id. at ¶¶ 37-38).

Plaintiff next alleges it was the successful bidder to do work for the Muskingum Watershed Conservancy District ("Muskingum"). (Id. at ¶ 44). Plaintiff alleges Merco contacted Muskingum's Deputy Chief, John Olivier, and told him plaintiff was incapable of building a product to the specifications it demanded. (Id. at ¶ 46). As a result, Olivier allegedly delayed purchase orders and investigated Merco's claims, which he ultimately

---

[3] This Court notes the allegations regarding domain names are not at issue in the instant Motion.

deemed to be false; however, plaintiff lost considerable time and expense that was not compensated for under the contract. (Id. at ¶¶ 47-48).

Based upon the above, plaintiff's Amended Complaint asserts claims under the Lanham Act, Tradename Violations, various claims for Misrepresentation/Unfair Competition, Misrepresentation/Slander/Defamation/Tortious Interference, and Fraud/Tortious Interference with Business Relationships. (Id.). Plaintiff seeks injunctive relief, lost profits, compensatory damages, punitive damages, attorney's fees, and costs. (Id.).

Merco filed its Motion for Partial Summary Judgment [Doc. 92], in which it seeks judgment on Count One as it relates to comparison of the parties' products; Count Four as it relates to submission of a bid to the Muskingum Water Conservancy District project; Count Five as it relates to rumors that AMD had closed and that Merco was the only company in the dock building business; and Count Six as it relates to representations that AMD is not related to Follansbee Dock and that Jon Meriwether was the driving force behind Follansbee Dock. Further, Merco asserts the defamation claim in Count Seven and the tortious interference claims in Counts Seven and Eight are barred by their respective statute of limitations. (Id. at ¶¶ 3-4). Finally, Merco asserts that representations in Counts Five and Six pertaining to Follansbee Dock being out of business and Jon Meriwether being a driving force behind Follansbee are true, and, therefore, cannot serve as a basis for the tortious interference claim. (Id. at ¶ 5).

II.    Standard of Review

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions

on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *See **Celotex Corp. v. Catrett***, 477 U.S. 317, 322 (1986). A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." ***Anderson v. Liberty Lobby, Inc.***, 477 U.S. 242, 248 (1986). Thus, the Court must conduct "the threshold inquiry of determining whether there is the need for a trial – whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." ***Anderson***, 477 U.S. at 250.

Additionally, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." ***Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.***, 475 U.S. 574, 586 (1986). That is, once the movant has met its burden to show absence of material fact, the party opposing summary judgment must then come forward with affidavits or other evidence demonstrating there is indeed a genuine issue for trial. Fed. R. Civ. P. 56(c); ***Celotex Corp.***, 477 U.S. at 323-25; ***Anderson***, 477 U.S. at 248. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." ***Anderson***, 477 U.S. at 249 (citations omitted).

Finally, "[a]s a general matter, of course, summary judgment is to be 'refused where the nonmoving party has not had the opportunity to discover information that is essential to his opposition.' ***Harrods Ltd. v. Sixty Internet Domain Names***, 302 F.3d 214, 244 (4th Cir. 2002)." ***Dave & Buster's, Inc. v. White Flint Mall, LLLP***, 616 Fed.Appx. 552, 561 (4th Cir. 2015). Further, however, "[g]enerally such an attempt is

made through the filing of a Rule 56(d) affidavit that outlines the need for discovery and what additional facts litigants hope to uncover through discovery to properly defeat summary judgment. Although this Court has found that filing an affidavit is not a necessary condition of obtaining discovery prior to summary judgment, we have repeatedly 'warned litigants that we "place great weight on the [Rule 56] affidavit"' and that "'the failure to file an affidavit under [Rule 56] is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate."' *Harrods Ltd.*, 302 F.3d at 244." *Dave & Buster's*, 616 Fed.Appx. at 561. In *Harrods*, the Fourth Circuit found that where "'the nonmoving party's objections before the district court served as the functional equivalent,' a Rule 56(d) affidavit may not be necessary. *Id*. at 244-45." *Id*. However, "[r]eference to [Rule 56] and the need for additional discovery in a memorandum of law in opposition to a motion for summary judgment is not an adequate substitute for a [Rule 56] affidavit." *Harrods*, 302 F.3d at 244.

III.    Discussion

    A.    False Advertising Under the Lanham Act

Merco seeks summary judgment as to Count One as it relates to comparison of the parties' products. Plaintiff's Amended Complaint alleges that defendant Merco made certain claims "to supply docks that are equivalent, if not better quality than plaintiff's" (Id. at ¶ 8), and "[w]e beat the competition pricing by 10%." (Id. at ¶ 9). Defendant Merco asserts the alleged misrepresentations which form the basis for AMD's Lanham Act false advertising claims do not constitute "commercial advertisements," amount to non-actionable puffery, were not alleged to have been made in interstate commerce, and were simply never said.

6

A claim for false advertising under the Lanham Act includes:

Any person who, on or in connection with any goods or services, . . . uses in commerce any word, term, name, symbol or device or any combination thereof, or any false designation of origin, false or misleading descriptions of fact or false or misleading representations of fact, which –

\*\*\*

(B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1)(B).

The Fourth Circuit has set forth the following elements a plaintiff must establish for a false advertising claim under the Lanham Act:

(1) the defendant made a false or misleading description of fact or representation of fact in a commercial advertisement about his own or another's product; (2) the misrepresentation is material, in that it is likely to influence the purchasing decision; (3) the misrepresentation actually deceives or has the tendency to deceive a substantial segment of its audience; (4) the defendant placed the false or misleading statement in interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the misrepresentation, either by direct diversion of sales or by a lessening of goodwill associated with its products.

7

***Scotts Co. v. United Indus. Corp.***, 315 F.3d 264, 272 (4th Cir. 2002).

The Fourth Circuit has not defined "commercial advertisement;" however, it appears several courts have adopted the four part test set forth in ***Gordon & Breach Science Publishers v. Am. Inst. of Physics***, 859 F.Supp. 1521 (S.D.N.Y. 1994), which provides:

> A statement constitutes a "commercial advertisement" only if it is: (1) commercial speech; (2) by a defendant who is in commercial competition with plaintiff; (3) for the purpose of influencing consumers to buy defendant's goods or services . . . [and] the representations (4) must be disseminated sufficiently to the relevant purchasing public to constitute "advertising" or "promotion" within that industry.

***AvePoint Inc. v. Power Tools, Inc.***, 981 F.Supp.2d 496, 519 (W.D. Va. 2013)(quoting ***Neurotron, Inc. v. Am. Ass'n of Electrodiagnostic Medicine***, 189 F.Supp.2d 271, 275 (D. Md. 2001)).

Merco asserts the following do not constitute "commercial advertisements": Count One as it relates to comparison of the parties' products; Count Four as it relates to submission of a bid to the Muskingum Water Conservancy District project; Count Five as it relates to rumors that AMD had closed and that Merco was the only company in the dock building business; and Count Six as it relates to representation that AMD was not related to Follansbee Dock and that Jon Meriwether was the driving force behind Follansbee Dock.

Merco's argument that the above do not constitute "commercial advertisements" relies on the failure to meet the fourth prong of the ***Gordon*** test that the commercial

speech "must be disseminated sufficiently to the relevant purchasing public to constitute 'advertising' or 'promotion' within that industry." 859 F.Supp. 1521. It appears uncontested that the statements alleged to have been made were commercial speech by defendant Merco, a commercial competitor of AMD, for the purpose of influencing consumers to purchase its goods, thus satisfying the first three prongs.

Merco's argument asserts any statements, if made, were not sufficiently disseminated given the relatively small segment of potential consumers its statements allegedly reached. AMD counters that the **Gordon** Court states "[t]hat breadth of dissemination, although important, is not dispositive. Rather, the primary focus is the degree to which the representations in question explicitly target relevant consumers." **Gordon**, 905 F.Supp. at 182.

At this point, this Court must pause to reflect simply on the standard for a Rule 56 motion for summary judgment. A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." **Anderson v. Liberty Lobby, Inc.**, 477 U.S. 242, 248 (1986). AMD has alleged that Merco made oral representations to four potential customers regarding Merco's superiority over it. The evidence presented, however, strongly contradicts these allegations. Merco has presented affidavits of Dave Maxwell and Mike White, wherein each swear that "[n]o such representations have been made by representatives of Merco, Inc. to me regarding [AMD] or the quality of its products, or comparing [AMD's] products to Merco Inc.'s products." [Doc. 98-5 at ¶ 4; Doc. 98-6 at ¶ 4]. Merco also submitted the Affidavit of John Olivier, who stated that the only thing he could recall was Jim Meriweather questioning whether AMD would meet specifications, particularly floatation. [Doc. 98-4].

9

At this point, this Court finds Merco has met its burden showing an absence of material fact; thus, AMD must now come forward with affidavits or other evidence demonstrating a genuine issue for trial. *See **Anderson***, 477 U.S. at 248. AMD has produced nothing to contradict these sworn statements other than deposition testimony of its own representatives, which this Court has reviewed and finds to be self-serving hearsay.[4] A party "cannot create a genuine [dispute] through mere speculation or the building of one inference upon another." ***Beale v. Hardy***, 769 F.2d 213, 214 (4th Cir. 1985). Therefore, "[m]ere unsupported speculation . . . is not enough to defeat a summary judgment motion." ***Ennis v. Ntn'l Ass'n of Bus. & Educ. Radio, Inc.***, 53 F.3d 55, 62 (4th Cir. 1995). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims . . .." ***Celotex Corp.***, 477 U.S. at 323-24. Accordingly, this Court finds that no reasonable jury could return a verdict for AMD based on the alleged statements of superiority to have been made to Maxwell, White, or Olivier.[5] As the Fourth Circuit recently stated in ***Belmora v. Bayer***,

---

[4] For example, Lucas Diserio of plaintiff AMD testified in his deposition, when asked about AMD's allegations that Merco claims to supply docks that are equivalent, if not better, quality than AMD, he replied, "[f]rom what I know, John Meriweather to John Olivier, at Muskingum, to the group, the Firehouse Dock in Wheeling. And beyond that, I'm not sure." [Doc. 97-13 at 88:19-89:3]. When asked whether Merco made any representations in commercial advertisements to the same effect, Diserio replied "[n]ot directly to our name, no." [Id. at 89:6-10]. When asked the same line of questioning, Marc Hannah, also of AMD, testified as to what Joe Forester had allegedly said, which is inadmissible hearsay, and this Court neither sees any statements from Mr. Forrester in the record, nor does plaintiff point to any in its brief. "Judges are not like pigs, hunting for truffles buried in" the record. ***United States v. Dunkel***, 927 F.2d 955, 956 (7th Cir. 1991).

[5] AMD also attached an Affidavit of Paul Samuel "Bud" Billiard [Doc. 97-4], in which "Bud" states that he is a resident of Wellsburg and that he "could tell that Meriweather was upset that the Diserios were going into competition against him." Other than that, we don't

"'[i]t is worth noting, as the Supreme Court did in **Lexmark [Int'l v. Static Control Components, Inc.**, 134 S.Ct. 1377 (2014), that '[a]lthough we conclude that [Bayer] has alleged an adequate basis to proceed under [43(a)], it cannot obtain relief without evidence of injury proximately caused by [the alleged misconduct], we hold only that [Bayer] is entitled to a chance to prove its case.' 134 S.Ct. at 1395." **Belmora**, 2016 WL 1135518. In this Case, AMD has been given a chance to prove its case; however, it has failed to do so.

Further, AMD continuously makes assertions without citing to any evidence in the record to support the same. Rule 56(c)(1) provides that "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record . . .." Further, "[t]he court need consider only the cited materials . . .." Rule 56(c)(3). "Simply put, the onus is on counsel to put their evidence in the record and to direct the Court's attention to it with briefs that intelligibly and efficiently cite the critical facts." **Wooten v. Commonwealth of Virginia**, 2016 WL 264959 (W.D. Va. Jan. 21, 2016).

The plaintiff has also alleged in its response, for the first time, that "when AMD does win the bid, Merco eliminates the business by announcing that it is giving away the dock for free to the customer out of the kindness of its heart. The customer then cancels the bid." [Doc. 97-1 at 4]. The plaintiff did not move to amend its complaint to

---

know much about Bud. The Affidavit does not indicate whether he is a consumer of docks or if any alleged false statements were made to him. This Court fails to see any relevance to this Affidavit.

include this new allegation, nor has it identified any evidence that this act ever occurred. To the extent AMD seeks relief on this ground, the same is hereby **DENIED**.

The alleged statements are also puffery. The Supreme Court has explained puffery as follows: "when a proposed seller goes beyond [mere exaggeration of the qualities which an article has], assigns to the article qualitites which it does not possess, does not simply magnify in opinion the advantages which it has but invents advantages and falsely asserts their existence, he transcends the limits of 'puffing' and engages in false representations and pretenses." *United States v. New S. Farm & Home Co.*, 241 U.S. 64, 71 (1916). "In order to form the base of a false advertising claim, the offending statement must be 'either false on its face or, although literally true, likely to mislead and to confuse consumers given the merchandising context.' *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1138 (4th Cir. 1993), *cert. denied*, 510 U.S. 1197 (1994). Accordingly, 'bald assertions of superiority or general statements of opinion' do not result in a violation of 15 U.S.C. § 1125(a). *Pizza Hut, Inc. v. Papa John's Int'l, Inc.*, 227 F.3d 489, 496 (5th Cir. 2000), *cert. denied*, 532 U.S. 920 (2001). Similarly, statements that are 'exaggerated advertising, blustering and boasting upon which no reasonable buyer would rely' are more properly considered 'puffery' and are not actionable under the Lanham Act's false advertising provision. *Southland Sod Farms [v. Stover Seed Co.]*, 108 F.3d [1134,] 1145 [(9th Cir. 1997)]. Other sources have described puffery as 'a general claim of superiority over a comparative product that is so vague, it would be understood as mere expression of opinion.' 4 J. Thomas McCarthy, McCarthy on Trademark and Unfair Competition 27.38 (4th ed. 1996)." *Nutrition & Fitness, Inc. v. Mark Nutritionals, Inc.*, 202 F.Supp.2d 431, 435 (M.D.N.C. 2002).

This Court agrees that any alleged statements made by Merco's representatives that its products were superior to AMD's are mere puffery. Plaintiff does not appear to genuinely dispute that such a statement, standing alone, is puffery. Plaintiff, however, argues that the statement of superiority becomes actionable when paired with the statements that Merco's owner, Jon Meriweather, was the driving force behind Follansbee Dock. In support, the plaintiff cites *Radio Today, Inc. v. Westwood One, Inc.*, 684 F.Supp. 68, 74 (S.D.N.Y. 1988), wherein the court was tasked with determining whether claims that a product was superior to another, with one company claiming to be the "creative force" behind the other's product, was mere puffery. The court opined, "[t]aken alone, the former statement would be puffing in that it appears to be an expression of opinion and not a representation of fact. However, when read in conjunction with the other alleged misrepresentations, I cannot hold as a matter of law that the statement is not actionable." *Id*.

In this case, there does not appear to be any allegation that the statements of superiority and Meriweather being the driving force of Follansbee Dock were ever represented in conjunction or that both statements were ever made to any one consumer. The Court in *Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc.*, 299 F.3d 1242 (11th Cir. 2002), explained the folly inherent in viewing an advertising campaign as a whole. It explained:

> There is one additional point to consider before we begin our analysis: the district court did not assess each advertisement independently, but instead evaluated the three in concert. The court reasoned that "[i]f the ad campaign as a whole would be misleading to the reasonable consumer, then the defendant should be enjoined from using that ad campaign." It is

13

true that "a court must analyze the message conveyed in full context,"
***Castrol Inc. v. Pennzoil Co.***, 987 F.2d 939, 946 (3d Cir. 1993), and that
"the court must view the face of the statement in its entirety, rather than
examining the eyes, nose, and mouth separately and in isolation from
each other." ***Id***. (Citation omitted). While the court should consider
context, it may not *assume* context. The problem with the district court's
approach is the assumption that consumers will be exposed to every
advertisement in a campaign.

***Johnson & Johnson***, 299 F.3d at 1247-48 (emphasis in original).

Plaintiff has offered no evidence to suggest any consumer was exposed to both
statements, and this Court will not *assume* they were.

Next, with regards to any alleged statements made by Merco that AMD had gone
out of business, the same is simply incorrect. Rather, the alleged statements were that
Follansbee Dock was going out of business. In an email from Marc Hannah, an
employee of Follansbee Dock at the time, to Jim Meriweather dated January 17, 2012
[Doc. 93-3], Hannah himself essentially told Merriweather that (1) Follansbee Dock had
gone out of business and (2) Merco was the only dock manufacturer in town.
Specifically, Hannah, in asking for a job with Merco, stated "should [Merco] decide to
add a position to fill the void being created by Follansbee Docks going out of business,
please consider me for a sales position." [Id].

Next, regarding statements allegedly made by Merco to Joe Forrester, AMD
states in its brief as follows:

At the same time, customers of Follansbee Docks were attempting to
contact AMD to purchase replacement parts for already existing docks.
Due to the illegal internet activities of Merco, some came into contact with

14

Merco. One in particular, Joe Forrester, contacted Merco asking for Follansbee Docks. Instead of referring him to AMD, Merco reported that Follansbee Docks was closed. At this point, the customer purchased parts from Merco.

[Doc. 97-1 at 3].

AMD has provided no support for the above statement. Again, this Court must stress that Rule 56(c)(1) provides that "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record . . .." Further, "[t]he court need consider only the cited materials . . .." Rule 56(c)(3). "Simply put, the onus is on counsel to put their evidence in the record and to direct the Court's attention to it with briefs that intelligibly and efficiently cite the critical facts." **Wooten v. Commonwealth of Virginia**, 2016 WL 264959 (W.D. Va. Jan. 21, 2016).

Additionally, in the deposition of Paul Diserio of AMD, when asked for a factual basis supporting the allegation that Merco intentionally started a rumor that "plaintiff" had closed, Diserio stated, "[o]nly what I'm told." [Doc. 97-14 at 94:15-22]. When asked if Follansbee Dock was out of business, he replied, "[t]hey were in business, but not selling boat dock parts." [Id. at 95:4-11]. Again, however, even if these statements were actionable, AMD has provided no evidence to support these assertions.

B.    AMD Asserts the Motion for Summary Judgment is Premature

In the "Legal Standard" section of its response brief, AMD states, "[t]here *may* also be additional facts not yet discovered that *could* further support allegations made in plaintiff's Complaint." [Doc. 97-1 at 5 (emphasis added)]. This language hardly seems

15

to indicate confidence in AMD's belief that it will ultimately discover helpful evidence; rather, it sounds like a desperate plea for more time to conduct a fishing expedition. Additionally, in the "Statute of Limitations" section of its brief in opposition to the instant Motion, plaintiff asks this Court to:

> take notice that a number of witnesses have yet to be deposed . . . . Many of Merco's employees who participated in this overarching strategy have yet to be deposed, various clients and vendors, including but not limited to those involved in the Muskingum Watershed and Fox Chapel matters, have yet to be deposed, and the experts have yet to be deposed. These depositions are expected to yield additional information pertaining to the overall plan of Merco to pursue AMD and the various measures taken in pursuit of that plan.

[Doc. 97-1 at 16].

This Court assumes AMD asks this Court to "take notice" of the above in an attempt to either deny the Motion for Summary Judgment as to the Statute of Limitations defenses or possibly as to the entirety of the Motion as premature.

"Generally such an attempt is made through the filing of a Rule 56(d) affidavit that outlines the need for discovery and what additional facts litigants hope to uncover through discovery to properly defeat summary judgment. Although this Court has found that filing an affidavit is not a necessary condition of obtaining discovery prior to summary judgment, we have repeatedly 'warned litigants that we "place great weight on the [Rule 56] affidavit"' and that "'the failure to file an affidavit under [Rule 56] is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate."'

*Harrods Ltd.*, 302 F.3d at 244." ***Dave & Buster's***, 616 Fed.Appx. at 561. In ***Harrods***, the Fourth Circuit found that where "'the nonmoving party's objections before the district court served as the functional equivalent,' a Rule 56(d) affidavit may not be necessary. *Id.* at 244-45." *Id.* However, "[r]eference to [Rule 56] and the need for additional discovery in a memorandum of law in opposition to a motion for summary judgment is not an adequate substitute for a [Rule 56] affidavit." ***Harrods***, 302 F.3d at 244.

Pursuant to this Court's initial Scheduling Order dated August 5, 2014 [Doc. 12], discovery in this matter was originally to be completed by June 30, 2015, and dispositive motions were due by July 13, 2015. When plaintiff was granted leave by this Court on May 29, 2015, to add defendant Fanscreens, it vacated the initial scheduling order. On November 12, 2015, this Court issued a new scheduling order setting discovery completion for August 1, 2016. This Court will not deny the Motion as premature. First, the parties have had over a year and a half to conduct discovery since the first Scheduling Order was filed. Second, the instant Motion was filed over two months ago, and the plaintiff should have been able to identify its deficiencies and correct them, or at a bare minimum take steps to do so. This Court does note that after briefing on the instant Motion was completed, plaintiff filed notices that several additional depositions have been scheduled; however, the plaintiff has not stated what specific information it believes it will uncover which will aid it in surviving the instant Motion. The plaintiff did not file a Rule 56(d) affidavit, and what the plaintiff has asserted is simply "not an adequate substitute for a [Rule 56] affidavit." ***Harrods***, 302

F.3d at 244.[6]   This Court finds it has not sufficiently stated the need for additional discovery related to the instant Motion or what additional facts it hopes to uncover.

C.     Tortious Interference

"To establish *prima facie* proof of tortious interference, a plaintiff must show: (1) existence of a contractual or business relationship or expectancy; (2) an intentional act of interference by a party outside that relationship or expectancy; (3) proof that the interference caused the harm sustained; and (4) damages."   Syl. Pt. 2, ***Torbett v. Wheeling Dollar Sav. & Trust Co.***, 173 W.Va. 210, 314 S.E.2d 166 (1983).

"[A]n individual's right to conduct a business or pursue an occupation is a property right.   The type of injury alleged in an action for tortious interference with business relationship is damage to one's business or occupation.   Therefore, the two-year statute of limitations governing actions for damage to property, set forth under W.Va. Code, 55-2-12, applies to an action for tortious interference with business relationship."   ***Garrison v. Herbert J. Thomas Memorial Hosp. Ass'n***, 190 W.Va. 214, 222, 438 S.E.2d 6, 14 (1993).

Plaintiff contends it is not bringing a tortious interference claim based solely upon Merco's alleged representation to John Olivier at Muskingum, but rather that "AMD is claiming that defendant Merco repeatedly interfered with both current business

---

[6]   This Court does not mean to say that discovery is over.   Rather, any further discovery as it relates to the instant Motion would likely be futile.   This Court reminds the parties that Rule 26(d)(1) outlines the scope of discovery and its limits as that which is "relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action . . . and whether the burden or expense of the proposed discovery outweighs its likely benefit."

relationships, as well as expected business relationships in violation of West Virginia State Law." [Doc. 97-1 at 15]. It is clear to this Court that plaintiff's claim for Defamation/Tortious Interference in Count VII, however, only applies to Muskingum. The entirety of the five (5) enumerated paragraphs contained within that claim, ¶¶ 44-48, expressly and solely refer to Muskingum.[7] It is disingenuous to argue otherwise. As such, the one-year statute of limitations applies to alleged defamation and the two-year statute of limitations applies to tortious interference as alleged in Count VII.

The alleged misrepresentations were made to Muskingum Deputy Chief Olivier in "February or March of 2012." [Doc. 93-1 at 97:4-11]. And as defendant points out, AMD learned of these statements sometime shortly after they were made, since it alleges to have taken action to alleviate concerns raised by Muskingum before the purchase order

---

[7] The paragraphs in support of Count VII allege, *in toto*:

44) Plaintiff was the successful bidder and ultimately obtained a contract for work with the Muskingum Watershed Conservancy District.

45) Defendant Merco was aware plaintiff was the successful bidder and was receiving a contract for work.

46) Defendant Merco's officers, agents, and/or employees contacted John Olivier, Deputy Chief of the Muskingum Watershed Conservancy District and told him that plainitff was incapable of building a product to the specifications demanded by the District, that plaintiff manufactured inferior and defective products as well as other false and misleading things about the plaintiff and its capabilities.

47) As a result of defendant Merco's misrepresentation, slander, defamation, and tortious interference with contract; Olivier delayed purchase orders and conducted numerous meetings with various officers, agents, and employees of the plaintiff as he investigated the veracity of defendant Merco's claims.

48) Ultimately, Olivier found plaintiff to be a capable, trustworthy, honest and quality business and allowed the District's contract with the plaintiff to proceed, though plaintiff lost considerable time and expense that was not compensated under the contract.

[Doc. 55 at ¶¶ 44-48].

would issue. The purchase order that was allegedly delayed was ultimately issued by Muskingum to AMD on March 12, 2012. [Doc. 93-7]. Thus, the limitations period would have begun to accrue on this claim sometime prior to the issuance of the March 12, 2012, purchase order date. The instant civil action was filed on May 8, 2014, more than two years after the action accrued. Accordingly, Count VII is time-barred and must be dismissed.

D.    Tortious Interference with Business Relationships

With regards to Count VIII, plaintiff alleges generally that alleged false statements intentionally made by Merco have deceived plaintiff's current or potential customers and induced them to do business with Merco instead of plaintiff.

The correct elements[8] for the tort of interference with expectations of business relationships are: (1) existence of a contractual or business relationship or expectancy; (2) an intentional act of interference by a party outside that relationship or expectancy; (3) proof that the interference caused the harm sustained; and (4) damages." Syl. Pt. 2, *Torbett v. Wheeling Dollar Sav. & Trust Co.*, 173 W.Va. 210, 314 S.E.2d 166 (1983).

This Court finds the vague allegations regarding this claim cannot survive. Again, it fails to cite to any proof of causation or harm sustained. *See Wooten v. Commonwealth of Virginia*, 2016 WL 264959 (W.D. Va. Jan. 21, 2016).

---

[8]  Citing to the same Syllabus Point of *Torbett*, plaintiff somehow misstates the elements as "(1) knowledge of Defendant about expectation; (2) intentional and improper interference by defendant; and (3) loss of the prospective advantage." [Doc. 97-1 at 17].

## CONCLUSION

For the reasons stated above, Merco Inc.'s Motion for Partial Summary Judgment **[Doc. 92]** is **GRANTED**.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to all counsel of record herein.

**DATED**: May 9, 2016.

JOHN PRESTON BAILEY
UNITED STATES DISTRICT JUDGE